**KIEWIT WESTERN COMPANY,**
**a Delaware corporation,**
**Plaintiff–Appellant,**

**v.**

**CITY AND COUNTY OF DENVER, a municipal corporation of the State of Colorado; the Department of Public Works for the City and County of Denver; and Michael Musgrave thereof, in his capacity as Acting Manager of the Department of Public Works for the City and County of Denver, Defendants–Appellees.**

No. 93CA1160.

Colorado Court of Appeals, Div. V.

Dec. 29, 1994.

Rehearing Denied March 9, 1995.

Certiorari Denied Sept. 25, 1995.

McAllister & Murphy, P.C., Robert T. McAllister, Kathryn Haight Meyer, Denver, for plaintiff-appellant.

Daniel E. Muse, City Atty., Steven J. Niparko, Asst. City Atty., Denver, for defendants-appellees.

Opinion by Judge RULAND.

Plaintiff, Kiewit Western Co., appeals from a judgment dismissing its complaint for declaratory and other relief against defendants, City and County of Denver, the Department of Public Works (Department), and Michael Musgrave in his capacity as acting Manager of the Department. We affirm.

The Department advertised for sealed bids to excavate for two runways at the Denver International Airport. It determined that plaintiff's bid was the lowest responsive bid for each of the runways, and accordingly, it awarded plaintiff both contracts. One of the contracts required payment to plaintiff in the approximate amount of $45 million and the other in the approximate amount of $23 million.

Each of the contracts contained a "changes in the work" procedure for plaintiff to obtain additional compensation. Specifically, claims for additional compensation were permitted if plaintiff discovered design errors, if it encountered differing site conditions than those represented by defendants, if there was delay in the progress of the work caused by defendants, and if any other circumstance arose which necessitated a change in the time of performance or payment.

The contracts specified time limits for submitting change orders requesting additional compensation. Each request was first reviewed by the Resident Engineer. If denied, the request had to be submitted to the Construction Manager. Upon denial by that official, a protest was required to the Assistant Director of Aviation, and thereafter to the Manager of Public Works (Manager).

If a claim for additional compensation was ultimately denied, the contracts provided that "disputes regarding this contract shall be resolved by administrative hearing under [the] procedures described in [Denver] Revised Municipal Code Section 56–106." This provision authorized the Manager to designate a hearing officer to conduct a hearing relative to any dispute. The hearing officer's decision was binding unless a written request for review by the Manager was made.

If the Manager approved a decision of the hearing officer adverse to plaintiff, plaintiff was authorized to seek judicial review pursuant to C.R.C.P. 106.

Plaintiff filed its complaint asserting 14 claims for relief. In its first two claims, plaintiff asserted that the claims submissions and dispute resolution procedures described above (the Procedures) were *ultra vires* as not authorized by the Colorado Constitution and the Denver City Charter. Plaintiff also alleged that the Procedures violated plaintiff's rights to due process under the Colorado and United States Constitutions because a fair and impartial hearing procedure was not required at the administrative level.

In its remaining claims for relief, plaintiff alleged that defendants were guilty of misrepresentations concerning the project prior to submission of plaintiff's bid and in conjunction with certain change orders. Plaintiff also alleged that defendants breached both implied warranties relative to site conditions and the covenant of good faith and fair

dealing, and had imposed "cardinal changes" to the work not contemplated by the original contracts.

On the basis of these allegations, plaintiff requested that it be awarded a *quantum meruit* recovery and damages.

In response to the complaint, defendants filed a motion to dismiss pursuant to C.R.C.P. 12(b)(5). As pertinent here, defendants requested that the first two claims for relief be dismissed on the basis that the Procedures were valid and binding. Defendants requested dismissal of the remaining claims on the basis that plaintiff had failed to follow the Procedures in the contracts and that, therefore, plaintiff had failed to exhaust its contractual remedies.

Based upon the parties' submissions, the trial court agreed with both of defendants' contentions and dismissed the complaint.

I

Plaintiff first contends that the trial court erred in dismissing its first claim for relief based upon the conclusion that the Procedures contained in the contracts were authorized by Colo. Const. art. XX, § 1 and Denver City Charter ch. A, art. II. Each of the cited provisions addresses the construction of Denver's public works but neither specifically authorizes the City to include the Procedures in public works contracts. We conclude that it is unnecessary to address this contention.

Generally, appellate courts will not address the constitutionality of a statute or ordinance if the controversy can be resolved on other grounds. *See Ricci v. Davis*, 627 P.2d 1111 (Colo.1981); *State v. American Can Co.*, 117 Colo. 312, 186 P.2d 779 (1947). Based upon plaintiff's allegations in its complaint, we conclude that principles of contract estoppel apply and require affirmance of the order entered by the trial court on this issue.

In *City of Colorado Springs v. Kitty Hawk Development Co.*, 154 Colo. 535, 392 P.2d 467 (1964), *cert. denied*, 379 U.S. 647, 85 S.Ct. 612, 13 L.Ed.2d 551 (1965), our supreme court addressed the application of contract estoppel in conjunction with a municipal contract. Kitty Hawk owned property adjacent to the City and entered into a contract with the City for annexation of that property in order to obtain water and sewer service. The contract required Kitty Hawk either to convey certain property to the City or to pay cash in an amount equal to eight percent of the value of the annexed land, at the option of the City.

Following performance of the contract by each of the parties, Kitty Hawk sued to recover the cash payment requested by the City on the basis that the contract provision requiring payment was unconstitutional and *ultra vires*. The court noted that the City was under no obligation to furnish water or sewer services to anyone outside its corporate limits. Thus, the court determined that no governmental power was bargained for in the contract, and there were no constitutional rights surrendered by Kitty Hawk in the transaction. Further, the court concluded that there were no statutory or constitutional provisions which prohibited imposing a compensation provision in the annexation agreement.

As a result, the court determined that, having received and retained the benefits under the contract, Kitty Hawk was estopped to assert that the compensation provision of the contract was *ultra vires* or unconstitutional. The rationale in *Kitty Hawk* was followed by a division of this court in *Lone Pine Corp. v. City of Fort Lupton*, 653 P.2d 405 (Colo.App.1982).

We view the rule in *Kitty Hawk* as instructive in resolving plaintiff's contention here.

There is no allegation that the claims submission and dispute resolution provisions were concealed from plaintiff prior to submission of its bids. And, while plaintiff challenges defendants' authority to include these provisions in the contracts, there is no constitutional or charter provision which expressly prohibits such provisions.

Both parties have received certain benefits from the contracts. While a dispute remains because plaintiff claims entitlement to additional compensation, the Procedures allow for this compensation if the request is justified.

Under these circumstances, we conclude that plaintiff is now estopped to assert that

the Procedures are *ultra vires* as not authorized by the Colorado Constitution and the Denver City Charter.

## II

■ Plaintiff contends that the trial court erred in dismissing its second claim for relief which challenged the Procedures as violating plaintiff's rights to compensation under the due process clauses of the Fourteenth Amendment and Colo. Const. art. II, § 25. Specifically, plaintiffs argue that the allegations of this claim establish that the Procedures fail to provide a full, timely, and fair review of any claim for additional compensation. We agree with the trial court's ruling.

Plaintiff first relies upon allegations in its complaint to the effect that the Procedures are complex, require an inordinate amount of time, and thus, in effect, result in a forfeiture of plaintiff's right to be paid in a timely manner. Plaintiff also alleges in its complaint that the various officials who would address plaintiff's claim for compensation are biased and have a vested interest in deciding any issue in defendants' favor. Plaintiff emphasizes its allegation that unspecified claims submitted by it under the Procedures were rejected by defendants because of bias. Finally, plaintiff complains that while it is required to meet certain time limits in filing documents in the Procedures, no reciprocal duty is imposed upon the various officials to issue a decision on the claim within any particular time frame.

The appellate courts in this state have not previously addressed the validity of these or similar procedures in government construction contracts in the context of due process analysis. Further, we are not aware of any cases from other jurisdictions that have addressed the due process issue in the context of all of the allegations in the second claim for relief. However, various federal courts have, in effect, addressed one or more aspects of this issue and we find these cases instructive.

First, we emphasize that we are evaluating the validity of dispute resolution provisions of contracts that were entered into voluntarily by competent and informed parties. Dispute resolution provisions of this nature in federal construction contracts have been upheld as valid and binding on the contractor absent fraud or bad faith on the part of the government. *See United States v. Moorman,* 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 (1950); *United States v. Joseph A. Holpuch Co.,* 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); *Happel v. United States,* 279 F.2d 88 (8th Cir.1960).

In this context, the fact that an official of the government is designated as the one charged with addressing the merits of the contractor's claim does not, for that reason, invalidate the contract. *See United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); *United States v. Moorman, supra; see also Empson Packing Co. v. Clawson,* 43 Colo. 188, 95 P. 546 (1908) (contractually agreed determination of suitable product quality by superintendent of one party to the contract held to be final and conclusive in the absence of mistake or bad faith).

Further, despite the potential time required to resolve disputes in these proceedings, similar contract provisions have been upheld because the courts imply an obligation on the part of the government officials to act on the contractor's claim with reasonable dispatch. *See Newport News Shipbuilding & Dry Dock Co. v. United States,* 7 Cl.Ct. 549 (Cl.Ct.1985); *Manpower, Inc. v. United States,* 513 F.2d 1396, 206 Ct.Cl. 726 (1975). As a result, federal courts have generally allowed the contractor to avoid complying with these procedures only after it has initiated the processing of a claim and the government official or officials have unreasonably delayed acting on the claim. *See New York Shipbuilding Corp. v. United States,* 385 F.2d 427, 180 Ct.Cl. 446 (1967); *C.J. Langenfelder & Son, Inc. v. United States,* 341 F.2d 600, 169 Ct.Cl. 465 (1965).

Applying those principles here, we conclude that plaintiff's allegations that the Procedures are complex, potentially time consuming, and that the decision makers are employed by Denver fail to state a claim for a due process violation.

This leaves for resolution plaintiff's conclusionary allegation that unspecified claims

were submitted for resolution and "summarily rejected ... due to the bias and partiality of said agents or representatives in favor of Denver."

If it is determined that the government official has acted with bias the decision may be set aside. *See C.J. Langenfelder & Son, Inc. v. United States, supra; In re Winchester,* 133 B.R. 368 (Bankr.N.D.Miss.1991) (state administrator communicated to plaintiff that further claims or appeals would be rejected for the same reasons as previous claims).

However, in our view, plaintiff may not avoid following the Procedures by simply making a conclusionary allegation of bias occurring at some stage of the Procedures with reference to some unspecified claim or claims. Otherwise, the Procedures could be avoided in every case by making that allegation. *See Carr v. Pacific Maritime Ass'n,* 904 F.2d 1313 (9th Cir.1990), *cert. denied,* 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991); *Newport News Shipbuilding & Dry Dock Co. v. United States, supra; see also Hoffman v. State Board of Assessment Appeals,* 683 P.2d 783 (Colo.1984) (taxpayer must exhaust existing and adequate statutory remedies before seeking judicial relief); *Leete v. State Board of Medical Examiners,* 807 P.2d 1249 (Colo.App.1991) (plaintiff's declaratory judgment action dismissed for failure to exhaust disciplinary administrative procedures). This is especially so in the due process context because, as noted by the trial court, demonstrated bias would constitute grounds for judicial reversal of the decision pursuant to C.R.C.P. 106(a)(4).

Accordingly, here, plaintiff's allegations in its second claim for relief are not sufficient to state a claim for any due process violation.

### III

Plaintiff next contends that the trial court erred in dismissing its remaining claims for relief on the basis that the requests for additional compensation should have been submitted under the Procedures. In support of this contention, plaintiff asserts that the contract provisions governing the Procedures are ambiguous and must be construed against defendants so that judicial pursuit of these claims is proper. In the alternative, plaintiff argues that these claims are not covered by the language in the contracts. We disagree with both contentions.

### A

The issue whether a contract is ambiguous presents a question of law. *Cheyenne Mountain School District v. Thompson,* 861 P.2d 711 (Colo.1993). Here, upon a contractor's unsuccessful submission of a claim for additional compensation, the applicable provision required that the "disputes regarding the contract" be resolved by the Manager. As noted, the contracts authorized additional compensation for design errors, differing site conditions, a change in time of performance, or payment.

Considering the basis for plaintiff's request for additional compensation, we conclude that these requests represent disputes regarding the contracts. This is because the essential components of the claims relate to differing site conditions both as to type and quantity of material. Hence, we find no ambiguity in the contracts in the context of these claims.

### B

Plaintiff alleges in its complaint that it was fraudulently induced into executing the contracts, as well as in agreeing to certain change orders by defendants, and that defendants violated the covenant of good faith and fair dealing. However, as noted, it is apparent that the alleged misrepresentations and the acts complained of address a "differing site condition" under the applicable provisions of the contracts.

Further, fraud in the inducement of a contract and breach of the covenant of good faith and fair dealing necessarily constitute a dispute relative to the contract itself. *See Cohen v. Quiat,* 749 P.2d 453 (Colo.App.1987) (addressing effect of general dispute arbitration provision of a contract); *see also National Camera, Inc. v. Love,* 644 P.2d 94 (Colo.App.1982) (fraud in inducement of contract subject to arbitration under contract calling for arbitration of disputes). Hence, we conclude that resolution of these claims

should have been undertaken pursuant to the Procedures.

Because of the foregoing resolution of plaintiff's contentions, it is unnecessary to address defendants' assertion that plaintiff's claims are barred by the Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A).

Further, while the parties addressed on appeal whether the contracts constituted adhesion contracts, plaintiff failed to present that contention in the trial court, and thus, we do not address that issue for the first time here. *See Matthews v. Tri–County Water Conservancy District,* 200 Colo. 202, 613 P.2d 889 (1980).

The judgment is affirmed.

BRIGGS and TAUBMAN, JJ., concur.