753 So.2d 305 (1999)
Darryl H. POTIER, et al.
v.
COMMISSIONER OF INSURANCE, et al.
No. 98 CA 1063.
Court of Appeal of Louisiana, First Circuit.
November 10, 1999.
Rehearing Denied December 30, 1999.
Writ Denied April 20, 2000.
*306 Anthony M. Fazzio, Lafayette, Edward J. Walters, Jr., Baton Rouge, for Plaintiffs-Appellants Darryl H. Potier, et al. and Appellant Anthony M. Fazzio.
Stephanie B. Laborde, Angela Adolph, Baton Rouge, for Defendants-Appellees Louisiana Patient's Compensation Fund Oversight Board, et al.
E. Barton Conradi, Baton Rouge, for Defendant-Appellee Commissioner of Insurance.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
PETTIGREW, J.
Plaintiffs in the instant suit for injunctive relief are claimants in a pending malpractice lawsuit. The instant case presents the res nova issue of whether the Louisiana Patient's Compensation Fund may expend trust fund money to affect issues of liability between claimants and a health care provider in the malpractice action prior to a judgment, settlement, or arbitration award. Based upon its finding that the Patient's Compensation Fund "is not expressly prohibited by law from paying the defense costs of the deceased physician in this matter," the district court declined to grant plaintiffs' request for injunctive relief. Plaintiffs now appeal the district court's determination and the dismissal of their lawsuit.

FACTS
In 1991, Darryl H. Potier ("Mr.Potier"), individually and on behalf of the minors, Cassandra L. Potier, Kevin D. Potier and Steven D. Potier, and Elizabeth D. Potier (collectively, "plaintiffs") filed suit in Vermillion Parish against the Estate of Dr. Bruce A. Grovenburg and his medical malpractice carrier, Physician's National Risk Retention Group ("PNRRG"), and several other defendants (collectively, "the malpractice defendants"). According to the allegations set forth in plaintiffs' petition, the late Dr. Grovenburg, prior to his death in 1990, treated Mr. Potier for obesity and an ulcerated stomach. Plaintiffs further allege that the malpractice defendants had information concerning Mr. Potier's medical condition that they failed to share with him, and prescribed certain medications that were contraindicated for his medical condition. Plaintiffs contend that as a result of the actions of the malpractice defendants, Mr. Potier has suffered renal failure and must undergo kidney dialysis.
After filing suit, plaintiffs inquired of the Louisiana Patient's Compensation Fund ("the Fund") as to whether Dr. Grovenburg was a covered health care provider under the Medical Malpractice Act ("MMA"), La. R.S. 40:1299.41, et seq. The administrators of the Fund confirmed that at the time of the alleged acts of malpractice, Dr. Grovenburg was a covered health care provider and insured by PNRRG. On November 12, 1991, PNRRG was purportedly placed in liquidation by the Louisiana Department of Insurance, and all suits and seizures against PNRRG were apparently stayed.
After being ordered to do so by the liquidation court, the plaintiffs and the Estate of Dr. Grovenburg purportedly agreed to settle their differences. Plaintiffs assert in brief that this settlement was never finalized because the administrators of the Fund sought to avoid a settlement (and a corresponding acknowledgement as to liability) *307 by agreeing to fund the defense costs incurred by the Estate of Dr. Grovenburg in the defense of this matter.
Accordingly, on January 30, 1998, plaintiffs filed the instant suit in East Baton Rouge Parish seeking injunctive relief against the Louisiana Patient's Compensation Fund Oversight Board, Louisiana Patient's Compensation Fund, Michael Walsh, as Executive Director of the Louisiana Patient's Compensation Fund Oversight Board, and James H. Brown, Louisiana Commissioner of Insurance (collectively, "defendants"). Alleging that defendants had violated their fiduciary duties as administrators of the Fund by providing services, attorney fees, costs and expenses to the Estate of Dr. Grovenburg in the malpractice action, plaintiffs obtained issuance of a temporary restraining order ("TRO") prohibiting defendants from continuing to pay the costs of defense in the malpractice action.
Several defendants, namely, the Louisiana Patient's Compensation Fund Oversight Board, Michael Walsh, Executive Director of the Louisiana Patient's Compensation Fund, and Cheryl Jackson, Medical Malpractice Director of the Louisiana Patient's Compensation Fund (collectively, "the PCF") opposed the application for preliminary injunction and filed a reconventional demand against plaintiffs seeking attorney fees and costs in connection with the wrongful issuance of the TRO. On February 9, 1998, the district court held a full hearing on plaintiffs' application for preliminary injunction. Present at this hearing were counsel for plaintiffs and the PCF. At the conclusion of the hearing, the district court dissolved the TRO, denied plaintiffs' application for preliminary injunction, and dismissed with prejudice plaintiffs' "Petition For Injunctive Relief." In a written judgment signed on February 11, 1998, the district court expressly reserved to the PCF the right to seek a hearing at a future date on their reconventional demand.[1] The district court subsequently issued written reasons for its decision on September 3, 1998. Subsequently, on February 13, 1998, plaintiffs appealed from the district court's judgment of February 11, 1998.
Defendant James H. "Jim" Brown, Commissioner of Insurance ("the COI"), did not appear at the February 9, 1998 hearing for injunctive relief. Curiously, it appears that on the day of the hearing, the COI evidently filed a "Peremptory Exception Of No Cause Of Action And Motion To Dismiss With Prejudice." Neither an original nor a copy of said pleading appears in the record. By an interim order of this court, the clerk of court of the district court was later directed to supplement the record with a true copy of the accompanying order that was signed by the district court ex parte on February 10, 1998.[2] According to a certification from the deputy clerk, all parties have acknowledged receipt of a copy of said order.
The district court's ex parte order of February 10, 1998, a copy of which was supplemented herein, reflects that a hearing was purportedly scheduled on the COI's exception and motion for February 8, 1998.[3] The order further reflects that the scheduled hearing was cancelled, the COI was dismissed from this litigation, and counsel for plaintiffs was directed to pay all court costs and costs associated with the COI's preparation for the cancelled hearing. On March 9, 1998, the plaintiffs, together with their attorney, Mr. Fazzio, suspensively appealed the judgment of February 10, 1998.
*308 Nevertheless, on February 20, 1998, the COI attempted, through the filing of an "Amendment To Peremptory Exception Of No Cause Of Action And Motion To Dismiss With Prejudice With Reconventional Demand" to resurrect the previously disposed of exception and motion to dismiss from which plaintiffs had already taken an appeal. In its amended pleading, the COI alleged that his counsel was not present at the February 9, 1998 hearing for injunctive relief because he had been advised by plaintiffs' counsel that the hearing had been postponed to a later date.[4] Accordingly, the COI contends that he "was prejudiced in that he did not have an opportunity to ask for costs and/or to reserve the right for a reconventional demand" for damages and/or attorney's fees in conjunction with the dissolution of the TRO.
On February 25, 1998, the district court signed an order attached to the COI's amended pleading directing that respective counsel for the COI and the PCF could assert their reconventional demands for costs and expenses against plaintiffs at a hearing to be held on April 13, 1998. A minute entry in the record reflects that the hearing scheduled for that date was rescheduled to May 11, 1998; however, there is no indication in the record whether said hearing ever took place.

ASSIGNMENT OF ERRORS
On appeal, plaintiffs ask this court to consider six assignments of error, as summarized below:
1) The district court erred in liberally construing the Louisiana Medical Malpractice Act to permit the PCF to control issues of liability between a claimant and a health care provider, extend benefits to non-health care providers, favor one class of co-beneficiaries over the other and create a classic conflict of interest, thereby, violating decisions of the Louisiana Supreme Court and Louisiana Courts of Appeal;
2) The district court erred in finding that the Estate of Dr. Grovenburg does not have sufficient assets to defend the underlying malpractice claim and that there are no other parties to defend the underlying malpractice claim;
3) The district court erred in requiring plaintiffs to demonstrate irreparable harm;
4) The district court erred in granting a peremptory exception, ex parte, without evidence, a hearing, notice and an opportunity to amend, and dismissing plaintiffs' petition against the COI;
5) The district court erred in substantively altering its judgment of February 10, 1998, to include a claim for damages and affecting plaintiffs' right of appeal; and
6) The district court erred by ordering counsel for plaintiffs to pay costs and court costs by a judgment that issued ex parte, without evidence, a hearing and notice.

ANALYSIS
At the outset, we note that the PCF asserts in its brief that as a state agency, its decisions regarding the management and regulation of the Fund should be afforded great deference by the courts. The PCF cites Holladay v. Louisiana State Board of Medical Examiners, 96-1740 (La.App. 4 Cir. 2/19/97), 689 So.2d 718, writ denied, 97-0730 (La.5/1/97), 693 So.2d 740 and Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984), generally for the proposition that "[c]onsiderable latitude must be afforded to administrative agencies to perform the functions delegated to them under law, and courts should hesitate to intervene." Accordingly, it is the position *309 of the PCF that its decision to fund the defense of the Estate of Dr. Grovenburg was in accordance with the provisions of the MMA and should not be reversed.
We note only that the rule relied upon by the PCF is applicable to "adjudications" or decisions made by administrative agencies pursuant to the Administrative Procedure Act ("APA")[5] (La. R.S. 49:950 et seq.). For purposes of the APA, a decision or order is a disposition required by the constitution or statute to be made only after notice and a hearing. It is clear that unless a statute or the constitution requires a hearing and notice, an agency action is not an adjudication; therefore, the provisions of the APA are not triggered in these instances. Hayden v. New Orleans Baton Rouge Steamship Pilots Fee Commission, 97-1239, p. 13 (La.1/21/98), 707 So.2d 3, 10. For this reason, the PCF's decision to fund the defense of the Estate of Dr. Grovenburg is not entitled to the deference normally afforded administrative agency determinations.
The primary issue presented by the instant case is whether the PCF may assume responsibility and expend trust fund money to affect issues of liability between a claimant and a health care provider before there is a judgment, settlement, or arbitration award. While the courts of this State have addressed similar issues involving the PCF, the precise issue of whether the PCF may expend trust fund money to furnish a defense for a party in an attempt to minimize exposure is a matter of first impression.
The Medical Malpractice Act ("MMA"), La. R.S. 40:1299.41, et seq., was enacted by the Louisiana legislature in 1975, and provides a framework for compensating individuals who have been injured as a result of medical malpractice committed by qualified health care providers. Bijou v. Alton Ochsner Medical Foundation, 95-3074, p. 4 (La.9/5/96), 679 So.2d 893, 896. Under the provisions of the MMA, the liability of a single qualified health care provider is limited to $100,000.00 for the injury to or death of any one person. La. R.S. 40:1299.42 B(2); Russo v. Vasquez, 94-2407, p. 5 (La.1/17/95), 648 So.2d 879, 882. Any damages in excess of the total liability of all liable health care providers may be recovered from the PCF, but any such damages may not exceed $500,000.00 plus interest and costs. La. R.S. 40:1299.42 B(3); Stuka v. Fleming, 561 So.2d 1371, 1373 (La.1990), cert. denied sub nom., 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990).
The MMA expressly provides and the jurisprudence is well established that where the insurer of a health care provider or a self-insured health care provider has paid the $100,000.00 statutory maximum, the liability of that health care provider is deemed to have been admitted or established. The only remaining issue then becomes the extent of damages, if any, in excess of the $100,000.00. La. R.S. 40:1299.44 C(5); Pendleton v. Barrett, 95-2066, p. 9 (La.5/31/96), 675 So.2d 720, 725-26.
In those cases where the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and the claimant is demanding an additional amount in excess thereof from the PCF for a complete and final release, La. R.S. 40:1299.44 C requires the claimant to utilize a special procedure for collecting from the PCF the amount in excess of the settlement. Russo, 94-2407 at 5, 648 So.2d at 882. In such cases, the claimant is required to file a petition seeking approval of the settlement and demanding additional damages from the PCF. La. R.S. 40:1299.44 C(1); Russo, 94-2407 at 5, 648 So.2d at 882. The MMA does not give the *310 PCF status as a co-obligor or co-defendant with the health care provider or its insurer. The only party defendant contemplated by the MMA is the health care provider. Williams v. Kushner, 449 So.2d 455, 458 (La.1984). The status of the PCF, after a settlement between the malpractice claimant and a health care provider or his insurer for $100,000.00, is more in the nature of a statutory intervenor than a party defendant. Stuka, 561 So.2d at 1374. As an intervenor, the PCF may put on evidence and unite with the defendant in resisting the claimant's demands, and may appeal a judgment, but may not object to the form of the action. Id.
In Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365, our supreme court concluded:
[T]he legislative intent of `liability' in Section 1299.44 C(5) was that the payment of $100,000 in settlement establishes proof of liability for the malpractice and for damages of at least $100,000 resulting from the malpractice.... However, at the trial against the [PCF], the [claimant] has the burden of proving that the admitted malpractice caused damages in excess of $100,000.
Graham, 97-0188 at 15, 699 So.2d at 372.
Earlier, in Russo, the supreme court held that "a settlement of less than a full $100,000.00 is insufficient to trigger the PCF's statutory liability for excess damages and insufficient to preclude the PCF from contesting the qualified health care provider's liability." Russo, 94-2407 at 8, 648 So.2d at 884. More recently, this court ruled that previous holdings of our supreme court "did not extend so far as to limit or deprive a [malpractice claimant]... of a right and/or cause of action against the PCF when the settlement is less than the ceiling sum of $100,000." Thibodeaux v. Paradigm Insurance Company, 96-0375, p. 6 (La.App. 1 Cir. 2/20/98), 709 So.2d 830, 833, writ denied, 98-1114 (La.6/5/98), 720 So.2d 685 (emphasis added) (citing Stuka, 561 So.2d at 1374 n. 8). This court then recognized that La. R.S. 40:1299.42 D(5) was applicable in such cases and concluded:
Thus, in those instances involving a settlement for less than the sum of $100,000, the [claimant] is not deprived of a cause or right of action against the PCF; however, the claimant bears the additional burden of proving malpractice liability of the underlying health provider. If the [claimant] satisfies the burden of establishing liability on the part of the provider, for damages over and above the amount of the settlement with the base carrier, the PCF's statutory responsibility is limited to those damage amounts exceeding $100,000; it will be credited for all amounts below $100,000, pursuant to La. R.S. 40:1299.42(D)(5).
Thibodeaux, 96-0375 at 7, 709 So.2d at 834.
In the instant case, the health care provider's liability insurer is allegedly in liquidation, and the estate of the deceased health care provider purportedly lacks sufficient resources to mount an adequate defense to the claims asserted against it by the plaintiffs. The PCF cites La. R.S. 40:1299.44 A(5)(a),(b) and (e) and D(2)(a) and (4) as authority for its contention that it is broadly authorized and statutorily obligated to protect and defend the fund. Accordingly, the PCF argues that if it does not provide "defense resources" to the estate, plaintiffs would be unopposed at trial, a situation the PCF claims would likely result in a large award in favor of plaintiffs. Furthermore, the PCF would be obligated to pay any amount in excess of $100,000.00 without any opportunity to contest liability. The PCF also argues that in such a case, it would also effectively be denied the opportunity to contest the quantum of the award because there would be little or no countervailing evidence upon which to base an appeal.
Asserting that the provisions of the MMA limit the liability of health care providers in derogation of the general rights of tort victims, the plaintiffs cite Hutchinson *311 v. Patel, 93-2156, p. 5 (La.5/23/94), 637 So.2d 415, 420, and Williams v. St. Paul Insurance Companies, 419 So.2d 1302, 1304 (La.App. 4 Cir.), writ denied, 423 So.2d 1182 (La.1982), for the proposition that the statute must be strictly construed. See also, Pendleton, 95-2066 at 9, 675 So.2d at 725. Accordingly, plaintiffs urge that the duties of the PCF are purely ministerial and that the PCF may not involve itself, directly or indirectly, in liability issues between a claimant and a health care provider.
Based upon our appreciation of the provisions of the MMA and the above-cited jurisprudence, it appears evident that the PCF's statutory responsibility is not triggered until there is a settlement as to liability by, or on behalf of, the health care provider and the claimant seeks an additional amount in excess thereof from the PCF for a complete and final release. In most cases, where the settlement is for the $100,000.00 statutory maximum, the PCF is thereafter precluded from further contesting liability, and the only remaining issue is quantum of damages.
In response to the liquidation court's settlement order, the plaintiffs in the underlying malpractice litigation purportedly authorized settlement with the Estate of Dr. Grovenburg for the MMA statutory limit and a complete release of their claims. According to plaintiffs' allegations in brief, the liquidation court determined that Louisiana claimants, like the plaintiffs herein, would receive no more than 22% of the MMA statutory limit of $100,000.00 or $22,000.00. The aforementioned settlement was never consummated due to the PCF's agreement to provide a defense for the Estate of Dr. Grovenburg.
In the opinion of this court, the PCF's involvement in this matter is premature. Absent a settlement as to liability, or a judgment awarding a claimant damages against a health care provider in excess of $100,000.00, the PCF has no standing to involve itself in matters relating to liability.
Under the [MMA], the [PCF] cannot contest liability. If the Malpractice Act does not contemplate the [PCF] as a party defendant, then neither does it contemplate the [PCF] as an intervenor on the issue of liability. By attempting to so intervene, to object to a settlement by the Health Care provider for the maximum liability permitted by the statute, the [PCF] is being an interloper and is attempting to do indirectly what it cannot do directly. If the Legislature had desired for the [PCF] to intervene or be able to object to a binding settlement for the maximum amount, it could and would have so provided.
... The [MMA] does not give the [PCF] status as a co-obligor or as a co-defendant with the health care provider or its insurer. The [PCF] is a creature of the legislature designed only to satisfy settlements and/or judgments against health care providers in excess of $100,000.00. It can have no greater status than given it by its creator (the Legislature).
Schwarzenburg v. Jackson, 600 So.2d 163, 164-65 (La.App. 5 Cir.1992) (emphasis in original) (citations omitted).
Unlike the facts presented in Schwarzenburg, the PCF in the instant case never formally intervened as a party in the underlying malpractice litigation. Nevertheless, by assuming responsibility for the defense costs incurred by a party in an effort to avoid liability, the PCF is only doing indirectly what it is prohibited from doing directly.
In the underlying malpractice case, plaintiffs have purportedly authorized settlement with the Estate of Dr. Grovenburg, for the statutory limit of $100,000.00; however, due to the liquidation status of PNRRG, plaintiffs will only receive no more than 22% or $22,000.00. Because PNRRG will not have paid the full sum of $100,000.00, the settlement will not satisfy the provisions of La. R.S. 40:1299.44 C(5) *312 and will be insufficient to trigger the PCF's statutory liability for excess damages. See Russo, 94-2407 at 8-9, 648 So.2d at 884. While the plaintiffs would not be precluded from seeking from the PCF damages over and above the settlement amount, plaintiffs would nevertheless bear the additional burden of establishing the malpractice liability of the health care provider. The resultant statutory responsibility of the PCF would be limited to those damage amounts exceeding $100,000.00. See Thibodeaux, 96-0375 at 6-7, 709 So.2d at 834.
Having determined that the PCF has no standing to involve itself in matters relating to liability absent a settlement, or a judgment awarding damages against a health care provider in excess of $100,000.00, we turn now to the issue of whether the trial court erred in requiring the plaintiffs to demonstrate irreparable harm as a basis for injunctive relief.
While irreparable harm is the usual issue in an injunction proceeding, it is clear that when the plaintiff is alleging that the defendant is acting in violation of the law, there is no need to prove irreparable harm. Meredith v. Ieyoub, 95-0719, p. 10 (La.App. 1 Cir. 4/4/96), 672 So.2d 375, 381, writ granted, 96-1110 (La.6/21/96), 675 So.2d 1094, affirmed, 96-1110 (La.9/9/97), 700 So.2d 478; Hays v. City of Baton Rouge, 421 So.2d 347, 349 (La.App. 1 Cir.), writ denied, 423 So.2d 1166 (La. 1982). Inasmuch as plaintiffs have alleged and shown that the PCF's expenditure of trust fund money for purposes of affecting issues of liability between a claimant and a health care provider before there is a judgment, settlement, or arbitration award contravenes the provisions of the MMA as well as the jurisprudence of this State, we are compelled to reverse the trial court, and accordingly, grant plaintiffs' request for a preliminary injunction.
In light of the foregoing, the damages and costs assessed against plaintiffs and their counsel for the wrongful issuance of a TRO, are hereby set aside. The remaining issues raised by plaintiffs are moot.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is reversed, and plaintiffs' request for a preliminary injunction is hereby granted. All costs of this appeal totaling $2,211.79, are assessed against defendants, the Louisiana Patient's Compensation Fund Oversight Board, Louisiana Patient's Compensation Fund, Michael Walsh, as Executive Director of the Louisiana Patient's Compensation Fund Oversight Board, and James H. Brown, Louisiana Commissioner of Insurance.
REVERSED AND RENDERED.
NOTES
[1] The district court's written judgment dated February 11, 1998, referred only to "defendants" and did not expressly refer to the PCF; however, inasmuch as the PCF entities were the only defendants present, we assume that these were the defendants to whom the district court was referring.
[2] February 10, 1998, was the day after the hearing for injunctive relief.
[3] In their brief to this court, plaintiffs point out that February 8, 1998, fell on a Sunday.
[4] In his brief to this court, the COI explains that on the morning of the hearing, the district judge initially decided to postpone same because all the parties had not been served. This information was communicated to the COI while waiting for the hearing to begin. Later that day, the district judge decided not to postpone the hearing, but to hold it instead that afternoon. The COI claims that he was never notified.
[5] It should be noted that while the statute is titled the Administrative Procedures Act, and designated herein as the APA, the jurisprudence has frequently referred to said statute as the Louisiana Administrative Procedures Act or LAPA.