2014 VT 59

## Luck Brothers, Inc. v. Agency of Transportation

[99 A.3d 997]

No. 13-249

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed June 13, 2014

Motion for Reargument Denied June 26, 2014

*David Bond* of *Fead Construction Law, PLC*, South Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Toni Hamburg Clithero*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Plaintiff Luck Brothers, Inc., a construction company that rebuilt a portion of Main Street in the City of Barre pursuant to a contract with defendant Vermont Agency of Transportation, appeals from the superior court's decision granting the Agency's motion to dismiss Luck Brothers' lawsuit on grounds that the company failed to exhaust its administrative remedies before pursuing a remedy in the superior court. In its complaint, Luck Brothers alleged counts sounding in breach of contract and negligent misrepresentation, among others, but also sought a

declaratory ruling that it had no obligation to exhaust administrative remedies because the Agency's claims process did not comport with the requirements of the Administrative Procedure Act or due process. We affirm the superior court's decision, but clarify the standard of review in appeals to the Vermont Transportation Board from Agency determinations under the claims process for construction contracts.

¶ 2. The following facts are undisputed. In 2011, the Agency advertised for bids to reconstruct a half-mile section of North Main Street in downtown Barre. Luck Brothers submitted the low bid of $10,615,573 and was awarded the contract for the project, which it commenced in the summer of 2011. In June 2012, Luck Brothers submitted a claim to the Agency seeking approximately $855,000 in additional compensation beyond the bid amount based on alleged differing site conditions from those assumed in the contract. One year later, Luck Brothers submitted a supplemental claim, making the total claim approximately $1.1 million.

¶ 3. The claim was submitted pursuant to the parties' contract, which incorporated, among other things, the Agency's 2006 Standard Specifications for the Construction Book, http://vtranscontracts. vermont.gov/construction-contracting/2006-standard-specifications, and the General Special Provisions for those Specifications, dated December 7, 2010, http://vtranscontracts.vermont.gov/sites/aot_contract_administration/files/documents/2006GenSpecs.pdf. The Specifications included provisions mandating a dispute resolution process for resolving claims regarding federal-aid highway construction contracts administered by the Agency, such as the instant one.

¶ 4. Under these provisions, claims for additional compensation must be submitted first to the Agency's Construction Engineer, and in the event the claim is denied, to the Agency's Director of Program Development. Specifications, § 105.20. If the Director denies the claim, the contractor may appeal to the statutorily created Transportation Board. See 19 V.S.A. § 3 ("A transportation board is formed to be attached to the agency of transportation.").

¶ 5. On September 7, 2012, less than three months after submitting its $855,000 claim, Luck Brothers filed a complaint against the Agency in superior court seeking, among other things, declaratory relief and compensatory damages. Substantively, the complaint alleged breach of contract, negligent misrepresentation, and breach of an implied warranty on the part of the Agency, and

sought penalties under the Prompt Pay Act. In support of these claims, Luck Brothers alleged that it incurred significant, unexpected additional costs as the direct result of the Agency's failure to inform bidders of material information that it was aware of concerning subsurface water conditions and deteriorating sewer lines.

¶ 6. Procedurally, the complaint sought a declaratory ruling that Luck Brothers had no obligation to exhaust its administrative remedies with respect to its claims against the Agency because those remedies were inadequate and did not comport with the requirements of due process. In support of this claim, Luck Brothers stated that the Transportation Board was empowered to provide only appellate, as opposed to original, jurisdiction over its contract dispute, and that neither the Legislature through the enabling statute nor the Agency through rulemaking had provided a valid or enforceable administrative proceeding for initially adjudicating contract disputes. The complaint stated that the provisions in the Specifications governing contract disputes were "laden with ambiguity," established unreasonably short deadlines for contractors to make claims, and imposed unreasonably burdensome requirements relating to such claims.

¶ 7. The Agency moved to dismiss the complaint on grounds of sovereign immunity and failure to exhaust administrative remedies. In an April 5, 2013 decision, the superior court declined to address the Agency's sovereign immunity argument, but granted its motion to dismiss based on Luck Brothers' failure to exhaust its administrative remedies. In dismissing the complaint on these grounds, the court reasoned as follows:

> Nothing in the case law or Vermont statutes precludes the [Transportation] Board from adjudicating Luck's claims in a manner that affords both parties due process. The Board itself has ruled in a separate case that its historical practice and future intention is to accord the parties before [it] in these types of disputes due process. Counsel for Luck . . . at the court's January 22, 2013 hearing on the pending motion candidly stated that the prior three cases he took to the Board were resolved generally in conformity with the contractor's due process rights.
>
> In these circumstances, the court fails to perceive any legitimate basis to exempt Luck from the obligation to

exhaust administrative remedies by proceeding to the Board. If a specific due process issue emerges, it can be raised before the Board and on appeal from any decision of the Board under [Vermont Rule of Civil Procedure] 74. If Luck believes that one or more provisions of the contract are void, it can raise those issues before the Board as well. If Luck believes that the [Agency] has breached its duty of good faith and fair dealing (such as by manipulating its decisionmaking or delaying it unreasonably), that too can be raised before the Board.

The court also found unavailing any facial challenge grounded on the absence of rulemaking, stating that Luck Brothers' objection on that count was related to the terms of the contract, but that due process was afforded in the administrative proceedings before the Transportation Board rather than in the contract's dispute resolution process. Accordingly, the court dismissed Luck Brothers' suit for lack of jurisdiction.

¶ 8. On appeal, Luck Brothers states the following claims of error: (1) the Agency's contractual claims process, on its face, does not afford constitutionally required due process protections; (2) because of the inadequacies of the claims process, it was not required to exhaust its administrative remedies; (3) the superior court erred in dismissing its rulemaking challenge; (4) the court erroneously conflated its due-process and breach-of-contract claims; and (5) the court abused its discretion by refusing to allow it to obtain discovery with respect to its jurisdictional issues.

¶ 9. Luck Brothers first contends that the superior court erred by focusing on the due process protections available in proceedings before the Transportation Board rather than in the claims process involving the Agency's Construction Engineer and Director of Program Development. According to Luck Brothers, the question of whether contractors are entitled to due process at the Agency level depends on whether one views the Engineer's and Director's decisions as quasi-judicial adjudications or merely executive-level decision-making. In Luck Brothers' view, if those decisions are in fact executive-level determinations rather than quasi-judicial adjudications, they may not be accorded any deference in a hearing before the Board, which must proceed on a clean slate. Luck Brothers states that, in light of the superior court's apparent approval of a previous Board decision in another

case describing its review of contractual disputes as something less than de novo and nondeferential, the court erred in concluding that due process protections at the Board level were constitutionally sufficient.

¶ 10. ██ ██ While we agree with some of the points made in this analysis, ultimately we conclude that the superior court properly dismissed this case based on Luck Brothers' failure to exhaust its administrative remedies. "The constitutional right to due process guarantees certain procedural protections before the government may deprive an individual of a protected property right." *In re Miller*, 2009 VT 112, ¶ 9, 186 Vt. 505, 989 A.2d 982. A contractor's right to payment under a contract with the state is a property interest entitled to due process protections. See *Gen. Elec. Co. v. N.Y. State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991) ("It is well established that a contractor has a right to timely payment for work it performs under a contract with a state agency, and that such a right is a property interest protected by the due process clause."). "Fundamentally, due process requires notice and an opportunity to be heard at a meaningful time in a meaningful manner." *Miller*, 2009 VT 112, ¶ 9 (quotation omitted). The United States Supreme Court has emphasized that procedural due process is a flexible concept that "calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quotation omitted).

¶ 11. ██ Although the Agency is statutorily authorized to award contracts "on terms as it deems to be in the best interest of the state, for the construction, repair, or maintenance of transportation related facilities," 19 V.S.A. § 10(1), Vermont statutes do not require the use of any particular terms or conditions in such contracts, and the Agency has not formally adopted rules to that effect. As noted above, the internal dispute resolution process is mandated by Agency Specifications generally incorporated into construction contracts that are awarded based on a public bid process. Under that process, the Construction Engineer evaluates claims for additional compensation beyond the winning bid, Specifications, § 105.20(c), and in the event the Engineer denies the claim, the Director of Program Development "act[s] as referee in all questions of dispute arising under the terms of the Contract." *Id.* § 105.02(a). Although the secretary of the Agency has broad authority to conduct hearings "[i]n the administration of the laws

relating to highways," 19 V.S.A. § 7a(a), the Specifications do not provide contractors with a right to a hearing in the internal claims process before the Engineer or Director.

¶ 12. If the Director denies a claim, contractors may appeal to the Transportation Board, which is made up of seven members who are appointed by the governor with the advice and consent of the senate and "whose interests and expertise lie in various areas of the transportation field." 19 V.S.A. § 3. The Board is legislatively vested with "[t]he regulatory and quasi-judicial functions relating to transportation." *Id.* § 5(a). The members of the Board or a designated hearing officer may hear quasi-judicial matters and make findings. *Id.* § 5(c). The superior court may review final orders of the Board "on the record . . . pursuant to Rule 74 of the Vermont Rules of Civil Procedure." *Id.*

¶ 13. ▮ The Board is specifically charged, with providing "appellate review . . . regarding legal disputes in the execution of contracts awarded by the agency." *Id.* § 5(d)(4). Based on this language, we recently held "that the Board's appellate jurisdiction unquestionably extends to breach of contract cases involving the Agency's transportation decisions." *Earth Constr., Inc. v. State Agency of Transp.*, 2005 VT 82, ¶ 6, 178 Vt. 620, 882 A.2d 1172 (mem.) ("Considering the breadth of this delegated quasi-judicial authority, we conclude that the unambiguous language providing for appellate jurisdiction over 'legal disputes in the execution of contracts' encompasses disputes involving breach of contract."). *Id.* ¶ 8.

¶ 14. The nature of the Board's review of contract issues is not entirely clear, as discussed by the superior court in reviewing recent Board decisions in another case, *In re TB-386 Miller Construction* (Jan. 24, 2013). In that case, which involved a legal dispute in the execution of an Agency construction contract, the Agency argued that the contractor was not entitled to a "new trial" before the Board because the Board was statutorily authorized to provide only on-the-record appellate review rather than a "contested case" under the Administrative Procedure Act. See 3 V.S.A. § 801(b)(2) (defining contested case); 3 V.S.A. § 809 (setting forth notice and hearing requirements of contested case). The contractor argued that it was entitled to a contested hearing before the Board because no due process protections were afforded at the Agency level in its dispute resolution claims process.

¶ 15. In response to these arguments, the Board stated that its historical practice since enactment of the enabling legislation was to provide de novo review of Agency contract decisions to ensure that the appealing parties were afforded procedural due process. The Board stated that, given the inadequate record produced at the Agency level, it needed to create a record to enable it to make an informed decision and to provide a record for the superior court in the event of an appeal. After reviewing its statutorily authorized powers that are consistent with contested-case hearings, the Board concluded that parties appealing Agency contract decisions were entitled to a review of factual and legal issues by a disinterested tribunal in a de novo hearing.

¶ 16. The Board, however, appeared to modify this assessment of its standard of review in response to the Agency's motion to clarify and reconsider the initial decision. In this later decision in *Miller*, the Board confirmed its prior ruling that contract appeals are contested cases, but, citing several of our past decisions, concluded that its review of such appeals was on the record rather than de novo. Nonetheless, the Board emphasized that, to satisfy due process, it had the authority to supplement a scant Agency record by allowing or requiring the production of additional documents, the taking of depositions, and the presentation of live testimony. The Board concluded that such a process was consistent with the Board's historic practice. In the end, according to the Board, it would require such additional information as needed to allow it to determine whether the Director's decision was reasonable.

¶ 17. We recognize that the Board's decision in *Miller* was not appealed to the superior court and is not directly at issue here. Nevertheless, the Board's understanding of its standard of review is critical in this case because of Luck Brothers' due process challenge and the superior court's reliance upon *Miller* in rejecting that challenge and dismissing Luck Brothers' suit.

¶ 18. To summarize, Luck Brothers has asserted a facial challenge to the Agency's claims process, arguing that it is void and unenforceable because it was not formally promulgated by rule and does not provide the due process protections required by law. Luck Brothers further contends that the Board's review of its contract dispute cannot provide the constitutionally required due process protections because of the Board's pronounced deferential, on-the-record review of a presumptively biased Agency decision

lacking such protections. In short, according to Luck Brothers, it is not required to exhaust its administrative remedies because those remedies are inadequate.

¶ 19. ■ ■ For the reasons stated below, we uphold the superior court's determination that Luck Brothers must exhaust its administrative remedies before bringing its contract dispute before the superior court. As noted, the Legislature has explicitly empowered the Transportation Board to adjudicate legal disputes concerning the execution of state contracts. We have "underscore[d] the importance of prior adjudication by administrative bodies." *C.V. Landfill, Inc. v. Envtl. Bd.*, 158 Vt. 386, 389, 610 A.2d 145, 147 (1992); see *In re State Aid Highway No. 1, Peru, Vt.*, 133 Vt. 4, 8, 328 A.2d 667, 669 (1974) ("[P]roceedings under various declaratory judgment statutes cannot be substituted for adequate and available remedies of review . . . of decisions by administrative tribunals."); cf. *Molesworth v. Univ. of Vt.*, 147 Vt. 4, 7, 508 A.2d 722, 723 (1986) ("Where . . . the Legislature has delegated authority to the Trustees of the University of Vermont to determine eligibility for reduced tuition charges . . . the declaratory judgments vehicle can not be used to frustrate that legislative choice."). Accordingly, we have "consistently held that when administrative remedies are established by statute or regulation, a party must pursue, or 'exhaust,' all such remedies before turning to the courts for relief." *Jordan v. State Agency of Transp*, 166 Vt. 509, 511, 702 A.2d 58, 60 (1997).

¶ 20. ■ "This long-settled rule of judicial administration serves the dual purposes of protecting the authority of the administrative agency and promoting judicial efficiency." *Id.* at 512, 702 A.2d at 60; see *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) ("Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review."). Hence, we generally will not interfere with an agency's decisions regarding issues within its legislatively permitted jurisdiction "unless and until all administrative remedies have been invoked." *Jordan*, 166 Vt. at 512, 702 A.2d at 60. Indeed, exhaustion of administrative remedies is a presumed requirement, and the burden is on the party seeking to

bypass the administrative process to show that it fits within an exception to this general rule. *Id.*

¶ 21. ■ Exhaustion of administrative remedies is often required even when a party asserts constitutional challenges to administrative proceedings. This is so because, beyond mere adjudication of a dispute, administrative processes serve to develop a record that can better inform a fair resolution of the case. *Town of Bridgewater v. Dep't of Taxes*, 173 Vt. 509, 511-12, 787 A.2d 1234, 1237-38 (2001) (mem.); see *Travelers Indem. Co. v. Wallis*, 2003 VT 103, ¶ 17, 176 Vt. 167, 845 A.2d 316 (stating that constitutional claims often involve weighing of competing interests that would be informed by how legislatively authorized administrator weighs those interests). Generally, "a facial challenge to the governing statute, or to rules adopted pursuant to that statute, may be allowable in a declaratory judgment action," but "use of a declaratory judgment action to attack the application of the statute in particular cases is not appropriate." *Wallis*, 2003 VT 103, ¶¶ 18-19 (concluding that appellant could bring declaratory judgment action to facially challenge statute, but not to challenge legality of Department of Labor and Industry's general practices with respect to interim orders); see *Williams v. State*, 156 Vt. 42, 53-54, 589 A.2d 840, 847 (1990) (stating that although commissioner of Department of Motor Vehicles was "not authorized to rule upon the constitutionality of the *statutes* he is bound to administer," he had jurisdiction to consider parties' claims that statutes were administered in unconstitutional manner); *Alexander v. Town of Barton*, 152 Vt. 148, 151, 565 A.2d 1294, 1296 (1989) (stating that while administrative agencies cannot rule on constitutionality of legislation, they can adjudicate constitutional questions in determining validity of statutorily delegated agency practices); *Christian Bros. Inst. of N.J. v. N. N.J. Interscholastic League*, 432 A.2d 26, 29 (N.J. 1981) (stating that administrative agency may rule on constitutional issues relevant and necessary for resolution of questions within scope of its jurisdiction).

¶ 22. In this case, Luck Brothers does not directly challenge the validity of any statute. Instead, it challenges the Agency's internal process for dealing with claims involving construction contracts. Indirectly, however, Luck Brothers is also challenging the administrative process as a whole regarding construction contract claims, including review before the Transportation Board. The company argues that, taking into account the Board's revised view

in *Miller*, wherein they adopted an on-the-record standard of review regarding construction contract disputes, a contractor is precluded from getting a hearing that affords all of the due process protections, including a full opportunity to present its case before a neutral decision maker. Because Luck Brothers is arguing that the entire process is constitutionally flawed, and because the Board has struggled to construe its role under the enabling act, we address and clarify its standard of review in this opinion. Based on that standard, articulated below, we conclude that Luck Brothers cannot demonstrate a lack of due process so as to allow it to avoid exhausting legislatively established administrative remedies.

¶ 23. ■ As a preliminary matter, we agree with Luck Brothers that the Agency evaluation of construction-contract claims is not adjudicative in nature, but rather an executive-level, contract-dispute-resolution process that is neither set forth in formal Agency rules nor part of legislatively authorized administrative adjudicative proceedings. The Agency does not point to any provisions in the Specifications or elsewhere that establish a formal process or due process protections regarding determinations by the Engineer and Director on such claims. In short, the claims process is not adjudicative in nature.

¶ 24. ■ Consequently, we also agree with Luck Brothers that the only legislatively authorized adjudicative administrative process — review by the Transportation Board — must provide contractors with a nondeferential standard of review that affords due process protections. Because the Agency evaluation of contract claims is an internal, informal dispute-resolution process that does not require any due process protections, the Board owes no deference to an Agency decision to reject a contract claim, beyond the persuasive value of the decision. Cf. *Gryl v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 145 (2d Cir. 2002) (stating that agency "no-action letters constitute neither agency rule-making nor adjudication and thus are entitled to no deference beyond whatever persuasive value they might have"); *Potier v. Comm'r of Ins.*, 753 So. 2d 305, 309 (La. Ct. App. 1999) (stating that decision of patient compensation fund to fund estate was not adjudicative in nature and therefore "not entitled to the deference normally afforded administrative agency determinations").

¶ 25. ▇ The Agency claims that it is entitled to deference because of its special expertise in construction contracts, but as the superior court pointed out, the Board itself has specialized expertise concerning industry norms, the doctrines that have arisen around them, and the highly fact-specific nature of the issues and disputes typically arising from construction contracts. See 19 V.S.A. § 3 (requiring governor to appoint so far as possible "board members whose interests and expertise lie in various areas of the transportation field"). The Board is well equipped to review both technical factual issues surrounding construction contracts and legal questions concerning the alleged breach of such contracts. See *Earth Constr.*, 2005 VT 82, ¶ 9 (noting that "the Board has historically exercised authority to resolve questions integral to the breach of contract determination," and that "the Transportation Board presumably possesses expertise" in "specialized field of transportation" and "in assessing standards of contract performance that are often implicated in legal disputes over the breach of contract").

¶ 26. ▇ The Agency also asserts, as it did in the *Miller* case before the Board, that the enabling legislation plainly accords the Board only limited on-the-record "appellate review." See 19 V.S.A. § 5(d)(4) (stating that Board shall "provide appellate review . . . regarding legal disputes in the execution of contracts awarded by the agency"). We disagree. Appellate courts normally apply a "nondeferential on-the-record standard of review . . . to lower court determinations regarding questions of law or mixed questions of law and fact." *State v. Madison*, 163 Vt. 360, 371, 658 A.2d 536, 543 (1995). By contrast, nothing in the enabling statute here restricts the Board's review to the record produced in the Agency. Indeed, to the contrary, the statute explicitly empowers the Board to hold evidentiary hearings, to issue subpoenas for the testimony of witnesses or the production of evidence, to make findings, to issue orders and decrees, and to render judgments. See 19 V.S.A. § 5(c), (f). When the record from the Agency is insufficient for the Board to make an informed decision, it may enhance the record to accomplish that end.

¶ 27. ▇ ▇ Thus, the enabling statute establishes a standard of review somewhere in between a de novo hearing that treats the agency decision as nonexistent and "usual appellate review, since the board may evaluate evidence in record form, as well as receive

direct testimony." *In re Wheelock*, 130 Vt. 136, 140, 287 A.2d 569, 572 (1972) (describing review by Employment Security Board as set forth in 21 V.S.A. § 1344); see *Madison*, 163 Vt. at 368-69, 658 A.2d at 542 (noting that courts and commentators have distinguished between terms "hearing de novo" or "trial de novo" and term "review de novo"). Review before the Transportation Board, although it does not necessarily involve a full-blown hearing and does not treat the Agency's decision as if it did not exist, is essentially de novo review. See *Madison*, 163 Vt. at 370, 658 A.2d at 543 (defining term "review de novo" as "a nondeferential review that generally relies on, but is not restricted to, the record"); 3 C. Koch, Administrative Law and Practice § 10.2, at 18 (2d ed. 1997) (stating that de novo judicial review of agency decision is usually based on original administrative record).

¶ 28. The Board in *Miller* felt compelled to define its review as deferential, on-the-record review based on several of our prior decisions, but those cases are distinguishable. In each of them, we construed the standard of review applied by a *court* to a legislatively authorized administrative decision. See *Ketchum v. Town of Dorset*, 2011 VT 49, ¶ 16, 190 Vt. 507, 22 A.3d 500 (mem.) (concluding that superior court provides on-the-record review of town selectboard's legislatively authorized decision to reclassify town road, where enabling statute was silent on standard of review); *Rhoades Salvage/ABC Metals v. Town of Milton Selectboard*, 2010 VT 82, ¶¶ 9-10, 188 Vt. 629, 9 A.3d 685 (mem.) (concluding that superior court provided on-the-record review of town selectboard's decision to deny junkyard permit, where enabling statute was silent on standard of review); *GP Burlington S., LLC v. Dep't of Taxes*, 2010 VT 23, ¶ 16, 187 Vt. 421, 996 A.2d 180 (rejecting taxpayer's claim that it was entitled to de novo review by superior court of appeal from Department of Taxes' denial of tax refund, where statute was silent on standard of review); *Town of Victory v. State*, 2004 VT 110, ¶¶ 14, 17, 177 Vt. 383, 865 A.2d 373 (concluding that superior court's review of land value set by division of property valuation is deferential arbitrary-and-capricious standard under statute that authorized "appeal" to superior court and was silent on standard of review); *Conservation Law Found. v. Burke*, 162 Vt. 115, 126, 645 A.2d 495, 501-02 (1993) (concluding that superior court's review of Agency of Natural Resources' decision to grant air pollution control permit for medical waste incinerator is deferential on-the-record standard under statute authorizing review as occurring "by appeal").

¶ 29. Apart from any reliance on "the ability of parties to develop facts before the agency," *Burke*, 162 Vt. at 126, 645 A.2d at 502, our holdings in these cases were grounded on separation-of-powers principles precluding courts from acting as superagencies in areas in which agencies are legislatively authorized to deal with matters within their specialized expertise. See *Town of Victory*, 2004 VT 110, ¶ 17 (stating that presumption against de novo court review of executive agency decision "is rooted in the separation of powers between the judicial and executive branches" and recognition of agency's legislatively granted authority to deal with matters in which it has specialized expertise); *Burke*, 162 Vt. at 126, 645 A.2d at 502 ("[T]he superior court is not a higher environmental agency entrusted with the power to make environmental law and policy de novo or with the power to apply the policy it develops to the facts it finds."). That is not a concern in this case, where we are considering the standard of review of an agency's informal dispute-resolution decision by a legislatively established administrative board with specialized expertise in the matter being reviewed.

¶ 30. ■ Here, the Board is empowered to require development of the record, and we have determined that it must apply a de novo, nondeferential standard of review to the Agency dispute-resolution decisions under the Agency's administrative-claims process. Given these due process protections, we discern no basis to allow Luck Brothers to avoid that legislatively authorized administrative review and have its contract dispute reviewed initially in the superior court. None of the exceptions claimed by Luck Brothers exempts it from having its claim reviewed first by the Transportation Board after the Engineer and Director have rendered their determinations.

¶ 31. ■ Regarding Luck Brothers' argument that the Agency was required to engage in formal rulemaking to establish procedures for its claim process, that argument falls away in light of our determination that the claims process is not primarily adjudicative in nature and that contractors can obtain procedural due process protections in an appeal to the Transportation Board under the standard of review outlined above. Luck Brothers argues that the Agency was required to adopt rules for its claim process pursuant to 3 V.S.A. § 831(a) because "due process" directs the agency to do so. That argument is unavailing for the

reasons stated above, even assuming that rulemaking otherwise would have been required. Cf. *Wallis*, 2003 VT 103, ¶ 18 n.5 (concluding that alleged failure to provide, by rule, standard beyond that set out in statute was not challenge to validity or applicability of rule as set forth in 3 V.S.A. § 807). By the same token, Luck Brothers cannot prevail on its argument that the Agency decisionmakers in the claims process are not neutral adjudicators.

¶ 32. ▆▆▆ Nor can Luck Brothers avoid administrative review based on the lack of time deadlines for decisionmaking within the claims process or on alleged ex parte communications between the Agency decisionmakers and others who influence their decisions. As for the latter point, the record on review by the Transportation Board is not necessarily limited to that submitted by the Agency, but rather "consists of all documents and materials directly or *indirectly* considered by agency decision-makers," including "all documents considered by the agency employees whose input reached the decisionmaker." *Burke*, 162 Vt. at 127, 645 A.2d at 502 (quotations omitted) (emphasis in original).

¶ 33. As for Luck Brothers' assertions concerning delay in the decisionmaking by the Engineer and Director, such assertions were neither pled in Luck Brothers' complaint nor raised in its memorandum in opposition to the Agency's motion to dismiss as a basis to avoid exhausting administrative remedies. Luck Brothers generally argued that the absence of deadlines for the Engineer and Director compromised the adequacy of the claims resolution process, but did not contend that the delay in this case had been so extensive as to warrant direct resort to the courts. And, in fact, the record is not entirely clear as to when Luck Brothers' claim was fully submitted. It appears from the record that Luck Brothers' initial claim was not fully submitted until June 2012. According to the Agency, that claim included over 350 pages of documentation and argument. Yet, less than three months later, Luck Brothers initiated its suit in the superior court. In July 2013, Luck Brothers submitted a supplemental claim that, according to the State, increased the total documentation of the claim to more than 600 pages.

¶ 34. ▆▆▆ ▆▆▆ Given the absence of a factual basis in the record to support an argument that Luck Brothers did not specifically raise below, we decline to consider the argument. See *State v.*

*Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) ("To properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it."). Moreover, we decline to permit Luck Brothers to adjudicate its breach-of-contract action in the first instance in superior court — in contradiction of the Legislature's will — based solely on the fact that the Agency has not established deadlines for the claims process. See *Kiewet W. Co. v. City & Cnty. of Denver*, 902 P.2d 421, 424 (Colo. App. 1994) (stating that "courts imply an obligation on the part of the government officials to act on the contractor's claim with reasonable dispatch" and thus "have generally allowed the contractor to avoid complying with these [administrative] procedures only after it has initiated the processing of a claim and the government official or officials have unreasonably delayed acting on the claim").

¶ 35. ▮▮▮ Finally, we discern no basis to conclude that the superior court abused its broad discretion in staying discovery during the pendency of Luck Brothers' facial challenge to the Agency's claims process. See V.R.C.P. 26(c)-(d) (stating that trial court has authority to control sequence and timing of discovery and to stay discovery). Luck Brothers' extensive discovery request was aimed at showing the lack of due process provided by the Agency's claims process. As explained above, however, we agree with the superior court that the due process protections to which Luck Brothers is entitled are provided in review by the Transportation Board. Accordingly, discovery into the lack of due process protections in the claims process was unnecessary to address Luck Brothers' facial due process challenge.

*Affirmed.*