## GP Burlington South, LLC v. Department of Taxes

[996 A.2d 180]

No. 08-387

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed March 11, 2010

*Debra L. Bouffard* and *Michael G. Furlong* of *Sheehey Furlong & Behm P.C.*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Timothy Collins*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Burgess, J.** Taxpayer GP Burlington South, LLC,[1] a private investment entity, appeals the superior court's decision granting, in part, its claim for a refund of a portion of the land gains tax it paid in connection with the sale of its property. Because we conclude that the proceedings before the superior court were premature under the circumstances of this case, we reverse the court's decision and remand the matter for a hearing before, and a determination by, the Commissioner.

¶ 2. In December 2000, taxpayer paid $8.3 million for a 20.58-acre industrial site located on the north and south sides of Lakeside Avenue in Burlington. The 11.78-acre north parcel, the subject of this appeal, included multiple manufacturing buildings. See 32 V.S.A. § 10002(a) (defining "land" as "all land, whether or not improved"). To calculate the land gains tax for that transaction, approximately $6.6 million of the purchase price was allocated to the buildings on the north parcel, and $900,000 was allocated to the value of the land on both parcels. See *id.* § 10005(b) ("In the event that a sale includes land and buildings or other structures, the amount realized shall be allocated between the land and the buildings or other structures on the basis of fair market value."). Taxpayer improved both the land and the buildings on the north parcel before selling the parcel on September 30, 2004 to a consortium of redevelopment investors for $30.225 million.

¶ 3. Before the sale, taxpayer and the Department engaged in negotiations over the value of the land component of the north parcel. Taxpayer submitted a commercial real estate appraisal (the "Keller appraisal") that assigned a value to the land independent of the buildings by comparing the parcel to undeveloped parcels. The Department rejected taxpayer's approach and issued a September 10, 2004 certification of land gains tax in the amount of $434,046. At the time of the September 30 sale, taxpayer filed a land gains tax return along with the $434,046 payment to avoid remitting ten percent of the sale price to the Commissioner. See *id.* § 10007(a). The following day, however, taxpayer filed a letter disputing the Department's calculation and asking for a hearing on the matter. In support of its request for a hearing, taxpayer

---

[1] GP Burlington South, LLC is the successor-in-interest to its sister-entity GP Burlington North, LCC, the entity involved in the transactions that are the subject of this case. Throughout this opinion, we will refer to either of the two entities as "taxpayer."

cited 32 V.S.A. § 10009(b) (stating that administrative provisions of chapter dealing with income tax apply to land gains tax) and 32 V.S.A. § 5936 (stating procedure for holding hearing on claim for setoff). The Department indicated in an October 6, 2004 memorandum that the matter was on administrative appeal. Over the following two years, the Department and taxpayer engaged in sporadic negotiations concerning the tax.

¶ 4. On August 11, 2006, taxpayer, with new legal representation, filed a formal petition for a refund of a claimed overpayment of the land gains tax associated with the September 30, 2004 sale. Along with the petition, taxpayer submitted a "corrected" land gains tax return claiming that the tax due should have been $107,447 rather than $434,046, thus demanding a refund of $326,599 plus interest. This amended tax return contained material changes from the September 2004 return, resulting in the claim for a significantly higher refund. Later that month, the Department acknowledged the amended return, indicated that it would consider the claim within the existing administrative appeal, and requested additional documents concerning the claim. The following month, taxpayer provided the specific documents requested, and the Department indicated that it would inform taxpayer if it needed anything else.

¶ 5. On February 9, 2007, the Department sent taxpayer a letter stating that the refund request was denied because: (1) certain claimed expenses connected with the subject sale lacked documentation; (2) the claimed cost of the land involved in the transaction was unreasonably high; (3) the Department could not accept either the fair market value attributed to the land component of the parcel or the percentage of gain from the sale attributed to the land; and (4) the Keller appraisal was not relevant insofar as it compared sales of unimproved parcels in assessing the fair market value of the land component of the subject property. The Department further stated that taxpayer's refund request lacked credibility in that it effectively claimed that the 2004 transaction resulted in a 186% gain with respect to the value of the structures on the land, but a loss with respect to the value of the land. Nevertheless, the Department made a settlement offer and suggested that discussions continue in an informal conference.

¶ 6. Taxpayer did not respond directly to the letter, but rather filed a notice of appeal with the Department on March 7, 2007,

seeking appeal to the superior court. See *id.* § 5885(b) (providing that aggrieved taxpayer may, within thirty days after Commissioner's determination concerning claim for refund, appeal that determination to superior court). The Department declined to transmit the appeal to the superior court, but rather notified taxpayer of a May 22, 2007 scheduled hearing date. In response to taxpayer's motions, the superior court stayed the administrative hearing and ordered the Department to transmit the appeal to the superior court. The court later denied the Department's motion to remand the matter for a contested case hearing before the Commissioner.

¶ 7. In denying the Department's motion for a remand, the superior court noted the tension between the Legislature's "deemed denial" provision, see *id.* § 5884(a) (providing that failure of Commissioner to refund amount claimed within six months of date of refund petition "shall be considered to be a notification to the taxpayer of the commissioner's determination concerning the claim"), which is aimed at assuring prompt resolution of refund claims, and the fundamental principle that appeals from administrative tribunals are on the record unless the Legislature explicitly directs otherwise. See *Conservation Law Found. v. Burke*, 162 Vt. 115, 126, 645 A.2d 495, 501-02 (1993) ("The nature of review is determined by the Legislature, but we presume that review will be on the record and not de novo."); *Dep't of Taxes v. Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294-95, 415 A.2d 216, 218-19 (1980) (stating that judicial review of agency decisions is presumed to be on the record absent specific statutory authorization to the contrary). To resolve this tension and avoid de novo review, the court ordered the Department to submit the complete agency record and to file any motion to present the testimony of any relevant agency decision-makers. The Department complied by submitting documents to the court. No evidentiary hearing was held before the superior court.

¶ 8. In July 2008, the superior court issued a final order granting taxpayer's refund claim, in part. The court determined that taxpayer was entitled to a refund of $108,512 because the Department had not applied the correct tax rate. Neither party appeals that decision. With respect to taxpayer's other challenges to the Department's land gains sale tax, the court determined that taxpayer had failed to meet its burden of demonstrating by clear and convincing evidence that there was no reasonable basis for the

tax imposed by the Department or that it was entitled to the refund it claimed. Taxpayer filed a motion to amend the decision, requesting a partial remand to the Commissioner so that it could present evidence on the additional expenses it incurred as set forth in its 2006 land gains tax return. The court denied the motion.

¶ 9. On appeal, taxpayer argues that the superior court erred by: (1) applying the wrong standard of review in requiring taxpayer to establish by clear and convincing evidence that the deemed denial of its refund claim was without a reasonable basis; (2) disregarding taxpayer's legal claims; (3) deferring to the Department's post-hoc rationalizations and rules to justify its denial of the refund claim; and (4) weighing the facts of the claim and making factual findings. Taxpayer also claims that the superior court violated its right to due process by not holding an evidentiary hearing or remanding the matter for an evidentiary hearing before the Commissioner.

¶ 10. The proceedings in this case have taken unusual and unnecessary turns because of the ambiguity in the applicable statute and the tactical decisions of the parties. Based on a review of the relevant statutes and what occurred in this case, we conclude that taxpayer's appeal to the superior court was premature. Accordingly, we remand the matter for the Commissioner to hold a hearing and make a decision, at which point appeal to the superior court will be an available option.

¶ 11. Sections 5883 and 5884(a) of Title 32 are internally inconsistent and confusing. In relevant part, § 5883 provides that upon notice of "denial or reduction of a refund claim, . . . the taxpayer may, within 60 days . . . , petition the commissioner in writing for a determination of that . . . refund," and that "[t]he commissioner shall thereafter grant a hearing upon the matter and notify the taxpayer in writing of his or her determination . . . ." In relevant part, § 5884(a) provides that "within three years after the date a return is required to be filed[,] . . . taxpayer may petition the commissioner for the refund of all or any part of the amount of tax paid with respect to the return," and further that "the commissioner shall thereafter . . . hold a hearing on the claim and shall notify the taxpayer of his or her determination of the claim within 30 days of the hearing." As indicated above, this subsection also states that "[t]he failure of the commissioner to refund the amount claimed by a taxpayer

within six months of the date of the petition for the refund . . . shall be considered to be a notification to the taxpayer of the commissioner's determination concerning the claim," and further that "[t]he notification shall be considered to have been given on the date of the expiration of the six-month period." 32 V.S.A. § 5884(a).

¶ 12. According to taxpayer, under § 5884(a), its formal August 11, 2006 refund claim triggered commencement of the six-month period, which expired without the Commissioner holding a hearing or issuing the refund, two days after the Department rendered its February 9, 2007 decision denying the claim. In taxpayer's view, this sequence of events created a "deemed denial" under § 5884(a), thereby giving taxpayer the exclusive remedy of appealing to the superior court from that denial. See *id.* § 5885(b) (providing that aggrieved party may appeal Commissioner's determination to superior court), § 5887(a) (providing that exclusive remedy with respect to refund "shall be the petition for refund provided under section 5884 . . . and the appeal from an adverse determination of the petition for refund provided under section 5885").

¶ 13. We do not agree with this analysis of the situation, which apparently was accepted by the superior court. Taxpayer did not formally seek a refund until August 11, 2006.[2] The Department, not the Commissioner, denied the request on February 9, 2007. Taxpayer then had sixty days to petition the Commissioner in writing for a refund, at which point the Commissioner was obligated to hold a hearing and notify the taxpayer in writing of his or her decision. *Id.* § 5883. Taxpayer did not request a contested case hearing in its August 11, 2006 refund claim or after the Department's denial of that claim.[3] Rather than request a contested case hearing and decision by the Commissioner following the Department's February 9, 2007 denial of its claim, taxpayer filed a notice of appeal to the superior court, relying on the fact that there had been a "deemed denial" by the Commissioner because six months had passed from the time of its August

---

[2] To the extent that taxpayer's October 1, 2004 letter could be construed as a request for a refund, that request was effectively superseded by its August 11, 2006 petition, which included the substantially modified land gains tax return.

[3] This may have been because taxpayer assumed that its October 2004 request for a hearing was still pending but, as noted above, the October 2004 request was mooted by the new and substantially modified refund claim filed on August 11, 2006.

11 petition without a decision by the Commissioner. See *id.* § 5884(a).

■ ■ ¶ 14. We recognize that the language of § 5884(a), standing alone, supports taxpayer's position. But when § 5884(a) is considered in conjunction with § 5883, taxpayer's construction does not make sense. The statutory provisions in chapter 151 of Title 32 use the word "commissioner" when referring to either the Department or the Commissioner, but, plainly, the overall statutory scheme anticipates that when there is a request for a refund, that request will be considered initially by the Department, and that the Department's decision may then be administratively appealed to the Commissioner, who makes a decision following a contested case hearing. To reconcile §§ 5883-5884(a), the word "commissioner" in § 5884(a), except in the sentence referring to the holding of a hearing, must be read as "department." Read as such, taxpayer has three years to petition the Department for a refund, and the failure of the Department to refund the claimed amount within six months shall be considered a notification that the Department has denied the claim. Pursuant to § 5883, the taxpayer then has sixty days to petition the Commissioner for the refund. If the taxpayer files the petition, the "commissioner shall thereafter grant a hearing upon the matter." *Id.* § 5883. Referring back to § 5884(a), the Commissioner must make a decision within thirty days of the holding of a contested case hearing. Following the Commissioner's decision, taxpayer may appeal to the superior court. *Id.* § 5885(b).

■ ¶ 15. This construction of the statutes is necessary not only to reconcile § 5883 with § 5884(a), cf. *Gavala v. Claassen*, 2003 VT 16, ¶¶ 7-8, 175 Vt. 487, 819 A.2d 760 (mem.) (reconciling inconsistent statute that called for on-the-record review but required reviewing court to allow presentation of additional evidence based on nothing more than party's request), but also to reduce the likelihood that the superior court will be put in the position of adjudicating, in the first instance, claims concerning policies within the Department's expertise, cf. *State v. Colby*, 2009 VT 28, ¶¶ 8-10, 185 Vt. 464, 972 A.2d 197 (construing disorderly conduct to avoid overreach of statute and alleviate tension caused by clash of two First Amendment rights). It is critical that the administrative agency with legislative authorization and specialized expertise to oversee technical subject areas such as these be given deference

with respect to policy-driven decisions. See *Town of Victory v. State*, 2004 VT 110, ¶ 16, 177 Vt. 383, 865 A.2d 373 ("To preserve the appropriate separation of judicial and executive powers, we presume that judicial review of administrative decisions is deferential absent a clear statement of contrary intent.").

■ ¶ 16. In this case, the superior court essentially found itself in the position of having to consider taxpayer's claims with virtually no administrative record. Indeed, it would be practically impossible in situations such as this for the superior court to conduct on-the-record judicial review if we were to construe the statutes to require the court to approve or reject a refund "denial" without the benefit of a contested administrative hearing, a formal record, and an administrative decision based on that hearing and record. In effect, the superior court would be put in the position of substituting its decision for agency inaction, without even the benefit of a formal record, in specialized areas ordinarily reserved for the agency to implement policy and apply statutory law. We decline to have the courts perform these executive functions absent clear legislative authorization, which does not exist here. See *id.* ("De novo review, whereby the superior court would simply substitute its judgment for that of the director, necessarily usurps power delegated to the executive branch; therefore that standard is inappropriate unless the statute expressly so provides."); *Tri-State Indus. Laundries, Inc.*, 138 Vt. at 294-95, 415 A.2d at 218-19 (stating that de novo review of agency decision is not to be presumed absent specific statutory authorization, and that function of courts is to review contested case on established record in which parties have had adequate opportunity to develop facts before agency).

¶ 17. Given the ambiguity of the relevant statutes, it is understandable that taxpayer assumed that there had been a deemed denial and that it was entitled to seek relief in the superior court. It is also understandable that taxpayer did not believe it was necessary to renew its request for a hearing following the Department's February 9, 2007 denial of taxpayer's formal request for a refund. Less understandable is taxpayer's decision to resist having the matter remanded for a contested case hearing and then seeking a remand following the superior court's adverse decision. In any case, at this point, the appropriate remedy is to remand the case to the Department for a contested hearing and

a decision by the Commissioner. Taxpayer may then appeal from any adverse decision to the superior court.

■ ■ ¶ 18. In light of our resolution of this case, we need not address most of the arguments raised by the parties. To simplify matters on remand, however, we address taxpayer's argument that equitable estoppel precluded the Department from relying on a 2006 administrative decision and a January 2007 technical bulletin concerning allocation of gain between land and structures on a given parcel. According to taxpayer, these documents plainly were not available to it or relied upon by the Department at the time the Department assessed the land gains sale tax for the September 2004 transaction and the taxpayer filed its original tax return for the transaction. That may be so, but the documents preceded the Department's February 9, 2007 letter denying taxpayer's "corrected" refund claim and are probative of the Department's rationale in denying the claim. See *Burke*, 162 Vt. at 126-27, 645 A.2d at 502 (stating that record for review consists of all documents directly or indirectly considered by agency decision makers). The 2006 decision and 2007 bulletin are relevant to the extent that the documents clarify the Department's evolving interpretation of the applicable statutes. Taxpayer is certainly free to argue that the documents are inconsistent with laws or regulations in place at the time of the 2004 transaction, but it has failed to demonstrate on appeal that the documents are irrelevant.

¶ 19. Taxpayer also briefly argues on appeal that the Department's policy of enhancing the value of land based on the value of structures situated on the land is wholly inconsistent not only with the land gains tax, which imposes a tax on land only, but also the principal policy underlying the statute — to place a premium on undeveloped and unimproved agricultural and forest lands. The superior court did not directly address this issue, and the Department fails to respond on appeal. Given the potential widespread scope of a ruling on this issue, the limited manner in which this question has been addressed thus far, and the fact that we are remanding the case for a contested case hearing to give the parties the opportunity to present further evidence, we decline to address the issue in the first instance at this juncture of the proceedings.

*Reversed and remanded for further proceedings consistent with this opinion.*