STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |

|  |  |  |
|---|---|---|
| | } | |
| In re Moore Accessory Structure Permit | } | Docket No. 161-8-09 Vtec |
| (Appeal of Smith and Siebeck) | } | |
| | } | |

Decision and Order on Remaining Issues

Appellants Gary Smith and Betsy Siebeck (Appellants) appealed from a July 18, 2009 decision of the Zoning Board of Adjustment (ZBA) of the Town of Pomfret, Vermont related to property of A. David Moore located at 6872 Pomfret Road. The ZBA decision upheld the Zoning Administrator's grant of Permit #08-8 to construct a new building on David Moore's property to house a wood planer and to store wood shavings. The ZBA decision also upheld the Zoning Administrator's March 25, 2009 and April 15, 2009 determinations that the existing structures and uses on David Moore's property are in compliance with the Pomfret Zoning Ordinance.

Appellants are represented by Marsha Smith Meekins, Esq.; Appellees A. David Moore, his sister Emily Moore Grube, and the Moore Family Partnership, LP (Appellees) are represented by A. Jay Kenlan, Esq.; and the Town of Pomfret is represented by Amanda S.E. Lafferty, Esq.

Procedural History

On October 11, 2010, the Court issued a decision resolving the cross-motions for summary judgment filed in this case. In re: Moore Accessory Structure Permit, No. 161-8-09 Vtec (Vt. Sup. Ct. Envtl. Div. Oct. 11, 2010) (Wright, J.) (hereinafter,

Summary Judgment Decision).[1]   A full description of the history and relationship of the Moore family properties, together with a full history of the various state statutes applicable to this matter, is found in the Summary Judgment Decision and is not repeated in this decision.

In the Summary Judgment Decision, the Court resolved the issue of whether any of the uses on the property are in violation.  It determined that three of the buildings are larger than the size eligible for exemption under Part 5 of the Zoning Ordinance—the Newman Planer/Shavings building, the WoodMizer Sawmill Shed, and the Lumber Drying Kiln—and therefore require zoning permits under Part 7 of the Zoning Ordinance, unless Appellees were able to show at trial that the sawing of logs and/or the drying and planing of lumber are considered to be "farming practices" or "agricultural use[s]."

If those practices are farming practices or are practices associated with farming, as farming is defined in 10 V.S.A. § 6001(22), then the buildings are exempt from municipal permitting as farm structures under 24 V.S.A. § 4413(d).[2]  If those buildings do not qualify for the 24 V.S.A. § 4413(d) exemption, but the practices are considered to be agricultural uses within § 6.3 of the Zoning Ordinance, then the buildings only require a non-discretionary permit from the Zoning Administrator under § 6.3, rather than requiring ZBA approval under § 7 of the Zoning Ordinance. Trial on these remaining issues was then postponed for a substantial period by

---

[1]  Appellants and Appellees also moved to alter or amend the judgment pursuant to V.R.C.P. 59(e).  The Town took no position with respect to either the original motion for summary judgment or the motions to alter or amend.  On February 17, 2011, the Court issued a decision denying both parties' motions to alter or amend, but correcting footnotes 4 and 5 and the first paragraph on page 18 of the original summary judgment decision.

[2]  Neither the state Natural Resources Board nor the state Agency of Agriculture, Food, and Markets sought amicus curiae status to be heard on the interpretation of these state statutes.

2

agreement of the parties.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, to take evidence on the remaining issues. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

The Farm-related Properties

As more fully described in the Summary Judgment Decision, and as borne out in the evidence presented at trial, the three adult siblings—David Moore, John Moore, and Emily Grube—jointly manage the Farm-related Properties as a whole farm operation. See, generally, Summary Judgment Decision at 6-7. The Farm-related Properties consist of the Partnership Property, the Johnson Parcel, the Grube Parcel, and nine of the ten acres of the David Moore Parcel, exclusive only of the Organ Shop and Garage/Storage Building. The cultivated portion of the David Moore Parcel is used for hay. The Farm-related Properties include approximately 850 acres of forested land, exclusive of the sugarbush, none of which is located on the David Moore Parcel. Together, all of the Farm-related Properties, including all of the David Moore Parcel except for the Organ Shop and the Garage/Storage Building constitute "the farm" for the purposes of the present analysis.

Based on the evidence produced at trial, the Court finds that Appellees, and in particular David Moore, harvest logs from the Farm-related Properties for lumber and firewood for use on the Farm-related Properties. On the David Moore Parcel, David Moore saws those logs into lumber, and planes and kiln dries the lumber, for use in constructing and maintaining buildings on the Farm-related Properties. The waste products of that processing are slab wood, sawdust, and shavings. The slab wood is used on the Farm-related Properties as fuel for the sugar-making operation;

3

the sawdust and shavings is used on the Farm-related Properties as livestock bedding.

Lumber Processing and Byproduct Use on Farms

It is customary and, indeed, economically necessary, for farmers in Vermont to use trees grown on their own farms not only for firewood, but also to saw or to have those trees sawn into lumber on the farm, as well as to process the lumber by planing and sanding, and to dry the lumber to use in constructing and maintaining farm buildings and structures. Vermont farmers also customarily use the byproducts of such lumber processing on the farm. Slab wood is used in sugar-making and to fuel wood-fired furnaces and wood stoves. Shavings and sawdust are used as animal bedding.

Farming Practices and Practices Associated with Farming Practices

Under 24 V.S.A. § 4413(d)(2), municipalities are prohibited from requiring a municipal permit for a farm structure. The phrase "farm structure" is defined in 24 V.S.A. § 4413(d)(1) as "a building for . . . carrying out other practices associated with agricultural or farming practices, . . . as 'farming' is defined in 10 V.S.A. § 6001(22)." The definition of farming in 10 V.S.A. § 6001(22) includes seven subcategories, two of which are applicable to the present case.

### Growing trees as a "fiber" crop as "farming" - 10 V.S.A. § 6001(22)(A)

The definition of farming in 10 V.S.A. § 6001(22)(A) covers the "cultivation or other use of land" for "growing food, fiber, Christmas trees, maple sap, or horticultural or orchard crops." 10 V.S.A. § 6001(22)(A). Because the growing of trees for lumber is not separately listed in this definition, it was necessary to take

4

evidence at trial from experts in the fields of silviculture and agriculture as to whether the growing of trees for lumber is considered to be growing "fiber."

Based on the evidence given by Appellants' as well as Appellees' expert forestry and agriculture witnesses, the Court finds that the use of land to grow trees to be used for lumber does constitute the growing of a "fiber" crop, as used in 10 V.S.A. § 6001(22)(A). The Court therefore concludes that the woodlots or managed forest land on the Farm-related Properties from which logs are taken to be processed into lumber involve "the use of land" for "growing . . . fiber" and therefore constitute "farming" as defined in 10 V.S.A. § 6001(22)(A).

Processing logs into lumber as "farming" - 10 V.S.A. § 6001(22)(E)

The Court next looks to whether the definition of "farming" includes the processing of the logs harvested from the Farm-related Properties—that is, if the sawing of logs into lumber, the drying and planing of lumber, and the production of slab wood, shavings, and sawdust byproducts, are "farming" or "farming practices."

Farming includes "the on-site storage, preparation, and sale of agricultural products principally produced on the farm." However, the processing of sawlogs principally produced on the farm into lumber and its byproducts (slab wood, shavings and sawdust) does not fall within the definition of farming in 10 V.S.A. § 6001(22)(E), because it goes beyond the mere "preparation" of agricultural products principally produced on the farm. Unlike 10 V.S.A. § 6001(22)(F), which defines a different subcategory of farming as the "storage, preparation, production, and sale" of fuel from agricultural products or wastes principally produced on the farm, § 6001(22)(E) does not include "production." The legislature therefore intended to omit the term "production" from the § 6001(22)(E) definition of farming, restricting it to "storage, preparation and sale." See Rhoades Salvage/ABC Metals v.

5

<u>Town of Milton Selectboard</u>, 2010 VT 82, ¶ 10 n. 2, 188 Vt. 629 ("it is reasonable to assume that, where the Legislature includes a particular provision in one section and excludes it from another, it has done so intentionally) (mem.); <u>Hopkinton Scout Leaders Ass'n v. Town of Guilford</u>, 2004 VT 2, ¶ 8, 176 Vt. 577. The processing of logs into lumber may be contrasted with the level of preparation of agricultural products approved in <u>In re Ochs</u>. 2006 VT 122, ¶¶ 11, 13–17, 181 Vt. 541 (2006) (mem.) (affirming the former Environmental Board's determination that the "storing, washing, waxing, wrapping, and packing apples [produced on the farm] for shipment, marketing and sale" is "storage, preparation, and sale" of the apples under § 6001(22)(E)).

In addition, the Court notes that § 6001(22)(E) includes as "farming" the sale to others of agricultural products <u>from</u> the farm, not simply the preparation of such products for use <u>on</u> the farm. If the Court were to interpret the term "preparation" in § 6001(22)(E) to include the production of lumber later to be sold to others, such an interpretation would allow an industrial-scale lumber manufacturing facility to be constructed on a farm without any municipal regulation of that facility. This is an irrational result; the Court must avoid interpreting a statute in a way that would create irrational results. See <u>Town of Killington v. State</u>, 172 Vt. 182, 189 (2001).

Therefore, the Court concludes that the definition of "farming" in 10 V.S.A. § 6001(22)(E) does not include the sawing of logs harvested from the Farm-related Properties into lumber, the drying and planing of lumber, or the production of slab wood, shavings, and sawdust byproducts.

### Farm structure under 24 V.S.A. § 4413(d)(1)

On the other hand, the construction and maintenance of farm buildings and structures, the use of slab wood for fuel to heat farm buildings and structures and for maple syrup production, and the use of shavings and sawdust for livestock

bedding and other farm purposes are all farming practices, as that term is used in 24 V.S.A. § 4413(d)(1). The processing of logs from a farm into products to be used <u>on</u> the farm (including the sawing of logs into lumber, the planing and drying of that lumber, and the production, as byproducts, of slab wood, shavings and sawdust) are practices associated with those farming practices. That is, although the processing of logs into lumber and its byproducts does not itself fall within the definition of farming in 10 V.S.A. § 6001(22), it does fall within the scope of "practices associated with . . . farming practices" in 24 V.S.A. § 4413(d)(1) if the lumber and its byproducts are used on the farm. Section 4413(d)(2), in turn, exempts from municipal regulation "farm structures," defined in § 4413(d)(1) as buildings used "for carrying out other practices associated with . . . farming practices."

Thus, to the extent that the three buildings remaining at issue in this case—the Newman Planer/Shavings building, the WoodMizer Sawmill Shed, and the Lumber Drying Kiln—are used to process the logs from Appellees' Farm-related Properties for use on the Farm-related Properties, including to saw logs into lumber, to dry and plane that lumber, and incidentally to produce slab wood, shavings, and sawdust byproducts, the buildings are "farm structures" under 24 V.S.A. § 4413(d)(1).[3]

The Court found from the evidence provided at trial that Appellees use the lumber they produce from the logs harvested from the Farm-related Properties in constructing and maintaining their farm buildings and structures, and that they use the byproducts from that lumber production for farm purposes such as maple syrup production and livestock management. Thus, the Court concludes that the Newman Planer/Shavings building, the WoodMizer Sawmill Shed, and the Lumber Drying

---

[3] To the extent that this analysis conflicts with footnote 24 of the Summary Judgment Decision, footnote 24 is hereby superseded.

Kiln are "farm structures" under the definition included in 24 V.S.A. § 4413(d)(1) and thus are exempt from municipal permitting as "buildings for carrying out other practices associated with . . . farming practices" under 24 V.S.A. § 4413(d)(1) and (2).

Section 6.3 of the Zoning Ordinance

Even if the Newman Planer/Shavings building, the WoodMizer Sawmill Shed, and the Lumber Drying Kiln did not fall within the 24 V.S.A. § 4413(d)(2) exemption, to the extent that they are used to process logs from trees grown on the farm into lumber and byproducts for use on the farm, they are also structures for agricultural use under § 6.3 of the Zoning Ordinance. As discussed in the Summary Judgment Decision, § 6.3 provides that "structures for agricultural use" are entitled to a non-discretionary permit from the Zoning Administrator, rather than requiring a permit from the ZBA under § 7 of the Zoning Ordinance.

Therefore, these buildings would fall within § 6.3 of the Zoning Ordinance if they were not exempted from municipal permitting under 24 V.S.A. § 4413(d)(1) and (2).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the sawing of logs into lumber from trees grown on the Farm-related Properties, and the drying and planing of lumber, and the production of slab wood, shavings, and sawdust byproducts for use on the Farm-related Properties are "practices associated with accepted agricultural or farming practices" under 24 V.S.A. § 4413(d)(1), as farming is defined in 10 V.S.A. § 6001(22), and that therefore the structures housing these functions are "farm structures" exempt from municipal permitting under 24 V.S.A. § 4413(d)(2).

Therefore, the Newman Planer/Shavings building does not require a permit

from the Zoning Administrator to the extent it is used for those functions, and the WoodMizer Sawmill Shed and the Lumber Drying Kiln are not in violation of the Zoning Ordinance for failure to obtain a permit, to the extent they are used for those functions.


Done at Berlin, Vermont, this 30th day of March, 2012.


_____
Merideth Wright
Environmental Judge